**PRESTIGE FORD GARLAND LIMITED PARTNERSHIP k/n/a Prestige Ford Garland, LLC and PFG Acquisition Corp., Appellants,**

v.

**Maria T. MORALES, Appellee.**

**No. 05–09–00211–CV.**

Court of Appeals of Texas, Dallas.

March 4, 2011.

Rehearing Overruled May 10, 2011.

Kathryn L. Shilling, Dallas, TX, for Appellants.

Ryan Paulsen, Haynes and Boone, L.L.P., Peter Dermot Marketos, Dallas, TX, for Appellee.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice MURPHY.

In this appeal, we must determine the accrual date for appellee Maria T. Morales's promissory estoppel claim that appellants breached their promise to sell, rather than lease, Morales a 1999 Ford Expedition. Appellants Prestige Ford Garland Limited Partnership k/n/a Prestige Ford Garland, LLC, and its related company, PFG Acquisition Corp. (collectively, Prestige Ford) appeal the judgment rendered on a jury's verdict in favor of Morales. Because we conclude Prestige Ford breached its promise to sell Morales a car in August of 1999 when it had her sign a lease contract, Morales's suit filed more than six years later is barred by the four-year statute of limitations applicable to promissory estoppel claims. Accordingly, the trial court erred in denying Prestige Ford's motion for judgment notwithstanding the verdict. We reverse the trial court's judgment and render a take-nothing judgment.

## BACKGROUND

In August 1999, Morales went to Prestige Ford's dealership in Garland, Texas to buy a new car. After working with a salesman, she agreed to purchase a 1999 Ford Expedition for $564 per month to be paid over a period of five years. Morales claims she learned in July 2004, one month before the end of the five-year term, the transaction had been structured and financed as a lease. Because Morales could not pay the fee to purchase the vehicle and was unable to refinance the vehicle, she turned it in to be sold at an auction. Three months later, Morales was told by the finance company she owed nearly $12,000 in lease termination fees due to excessive wear and use.

Morales sued Prestige Ford in May 2006, over six years after she had signed the lease agreement, took possession of the car, and began making lease payments. Morales's allegations included claims for

fraud, violations of the Texas Deceptive Trade Practices Act, and promissory estoppel. Morales claimed Prestige Ford "exploited the fact that [she] did not speak English" and "took advantage" of her lack of knowledge and experience when it told her she was buying the car but then drew up the transaction as a lease. She also claimed Prestige Ford concealed its deceitful conduct by providing her a contract showing she had purchased the vehicle.

The case was tried to a jury for four days. After Morales rested, Prestige Ford moved for a directed verdict on all claims, arguing each cause of action was time barred. The trial court denied the motion and submitted the case to the jury. The jury returned a verdict in favor of Morales on her fraud, DTPA, and promissory estoppel claims. With respect to Morales's fraud and DTPA claims, the jury found Prestige Ford fraudulently concealed its acts but also found Morales discovered or reasonably should have discovered Prestige Ford's fraud and deceptive acts by April 2000. As to the promissory estoppel claim, the jury was not asked the date Prestige Ford breached its promise to sell Morales the car or when Morales reasonably should have discovered Prestige Ford's breach. The jury found damages in the amount Morales paid for the car, plus attorney's fees.

Following the jury verdict, the parties filed post-judgment motions. Morales asked the trial court to disregard the jury's findings as to (1) the date she should have discovered the fraud and deceptive acts, and (2) the amount she paid for the car, claiming that amount was uncontested. She also asked the trial court to enter judgment on the jury's promissory estoppel finding. Prestige Ford filed a motion

to disregard the jury's liability and damage findings as to Morales's fraud and DTPA claims and asked the trial court to enter judgment in accordance with the jury's findings that Morales discovered or should have discovered the fraud and deceptive acts by April 2000. Prestige Ford also moved for a judgment notwithstanding the verdict on Morales's promissory estoppel claim, again arguing the claim was barred by limitations.

The trial court denied Morales's request to disregard the jury's findings she should have discovered the fraud and deceptive acts by April 2000 but granted Morales's request as to the amounts she paid. The trial court also denied Prestige Ford's motion for JNOV and rendered judgment on the jury's promissory estoppel finding, awarding Morales damages of $33,840, the amount she paid, pre- and post-judgment interest, as well as attorney's fees and costs. The trial court also ordered that Prestige Ford receive a credit for the amounts owed by Morales for her excessive use of the vehicle.[1] Prestige Ford appealed.

## DISCUSSION

Prestige Ford raises three issues on appeal, the second of which is dispositive. Prestige Ford contends the trial court erred in not granting its motion for JNOV because Morales's promissory estoppel claim is barred by the four-year statute of limitations. Resolution of this issue requires the Court to determine whether Morales's claim accrued (i) in August 1999, when Prestige Ford had her sign a lease, rather than a sales contract or (ii) in 2004, when she finished making payments.

---

1. The record shows Prestige Ford paid the amount owed by Morales to the finance company.

## Standard of Review

A judgment notwithstanding the verdict is proper when the evidence is conclusive and one party is entitled to judgment as a matter of law, or a legal principle precludes recovery. *Tiller v. McLure,* 121 S.W.3d 709, 713 (Tex.2003) (per curiam); *John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex.App.-Houston [1st Dist.] 1992, writ denied). We review challenges to a trial court's rulings on motions for JNOV under the same legal-sufficiency test applied to appellate no-evidence challenges. *City of Keller v. Wilson,* 168 S.W.3d 802, 822–23, 827 (Tex.2005); *Mauricio v. Castro,* 287 S.W.3d 476, 478–79 (Tex.App.-Dallas 2009, no pet.). In our legal-sufficiency review, we consider the evidence in the light most favorable to the fact finding and indulge every reasonable inference that would support it. *City of Keller,* 168 S.W.3d at 822. We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. If more than a scintilla of probative evidence supports the finding, the legal sufficiency challenge fails. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 233–34 (Tex.2004). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994). In contrast, evidence that is "so weak as to do no more than create a mere surmise or suspicion of its existence" is no more than a scintilla and thus, no evidence. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004) (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)).

■■■ Because the statute of limitations is an affirmative defense, a defendant bears the burden to plead, prove, and secure findings to support its affirmative defense. *See* Tex.R. Civ. P. 94 (limitations is affirmative defense); *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex. 1988) (affirmative defense of limitations must be proven by asserting party); *Solares v. Solares,* 232 S.W.3d 873, 878–79 (Tex.App.-Dallas 2007, no pet.) (same). This burden includes establishing when the plaintiff's cause of action accrued to demonstrate the bar of limitations. *See Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 845 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.). When, as here, the jury was not asked to determine when the cause of action accrued for purposes of supporting a limitations defense, the defense is waived unless the date of accrual was conclusively established under the evidence. *See* Tex.R. Civ. P. 279; *Ingersoll–Rand Co. v. Valero Energy Corp.,* 997 S.W.2d 203, 210 (Tex.1999).

## Applicable Law

■■■ A claim for promissory estoppel contemplates, among other elements, breach of a promise or conduct inconsistent with it. *See Wheeler v. White,* 398 S.W.2d 93, 96 (Tex.1965); *Citizens Nat'l Bank at Brownwood v. Ross Constr. Co.,* 146 Tex. 236, 206 S.W.2d 593, 595 (1947). A promissory estoppel cause of action is governed by a four-year statute of limitations. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.051 (West 2008); *Ambulatory Infusion Therapy Specialist, Inc. v. N. Am. Adm'rs, Inc.,* 262 S.W.3d 107, 119 (Tex. App.-Houston [1st Dist.] 2008, no pet.). The statute of limitations does not begin to run until the cause of action accrues. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.051; *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex. 1998). Generally, a cause of action accrues when "a wrongful act causes some legal injury, even if the fact of injury is not

discovered until later, and even if all resulting damages have not yet occurred." *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex.1997) (quoting *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996)). Thus, a promissory estoppel cause of action accrues when the promisor breaches its promise to the promisee. *Wheeler,* 398 S.W.2d at 96; *Bloom v. Burkholder Corp.,* No. 05–94–01297–CV, 1995 WL 379272, at *2 (Tex. App.-Dallas May 30, 1995, no pet.) (not designated for publication). The question of when a cause of action accrues is generally one of law for the courts to determine. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 221 (Tex.2003) (citing *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990)).

## Analysis

The parties agree the underlying promise supporting the jury's promissory estoppel findings was Prestige Ford's August 1999 promise to sell Morales a car for a specific payment.[2] The parties also agree Morales was required to bring her claim for promissory estoppel no later than four years after the day her cause of action accrued. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.051; *Murphy,* 964 S.W.2d at 270. The parties disagree, however, on when Morales's promissory estoppel cause of action accrued—that is, when the promise to sell her a car was breached. *See Bloom,* 1995 WL 379272, at *2.

The record before us shows that in August 1999, Morales went to Prestige Ford's dealership intending to buy a car. Morales testified that after she negotiated a deal with the salesperson, she signed what she thought was a purchase agreement and drove the Expedition home. She did not receive a copy of the paperwork at that time but was told she would receive her copy in the mail. The document she signed was dated August 25, 1999, was entitled "World Omni Financial Corp. CLOSED END MOTOR VEHICLE LEASE AGREEMENT," and listed Prestige Ford as the lessor and Morales as the lessee. World Omni was the finance company with whom Prestige Ford financed its leased vehicle transactions,[3] and Prestige Ford assigned the lease and vehicle to World Omni, who became the lessor.[4] According to the payment terms disclosed on the lease contract, Morales owed $564.76 on the twenty-fifth day of each month for sixty months. Morales testified this was the deal she reached with Prestige Ford's salesperson to buy the car and these were the terms she performed; she testified she made her monthly payments of $564 to World Omni beginning in September 1999. Also, by letter dated September 11, 1999, World Omni notified Morales that it had purchased her "lease contract." The monthly statements she received from World Omni referenced her lease and detailed her "lease activity summary."

2. Specifically, in Question 12, the jury was asked whether "Morales substantially rel[ied] to her detriment on Defendants' promise, if any, to sell to Ms. Morales the 1999 Ford Expedition for a payment of $564.76 per month, and was this reliance foreseeable by Defendants?" In Question 13, the jury found Morales was entitled to damages in the amount she paid for the Expedition.

3. World Omni's corporate representative, Brent Rowe, testified World Omni had a "dealer lease agreement" with Prestige Ford.

He explained "[i]t's a transaction agreement between [World Omni] and the dealership. What generally happens is the dealership will set up the contract ... and then, [World Omni] would purchase the contract from the dealership."

4. Specifically, the dealership assigned "all of its right, title, and interest in and to this Lease and in the Vehicle" to World Omni under the terms of the dealer lease agreement between the parties.

World Omni telephone records show Morales contacted it on several occasions, including a call on April 24, 2000 with the notations Morales was "moving back to Mexico" and "since unit is a lease they dont [sic] want it" and she could not find anyone to take over the payments "since its [sic] a lease...."

In November 1999, Morales returned to Prestige Ford to ask why she had not received her paperwork in the mail. She met with Prestige Ford's employee and received a sales contract. She testified the employee told her "these were the documents for the Expedition." The sales contract was dated November 2, 1999 and showed Morales as the buyer with monthly payments of $774.17 beginning December 2, 1999 and ending November 2, 2004. Morales never paid according to the terms of the sales contract; she testified Prestige Ford's salesperson told her "not to worry" and "to continue to pay" the amount on the invoices sent by World Omni. Morales explained the sales contract was the document that "proved that the vehicle was being purchased" and memorialized the promise made in August 1999 to sell her the car. She testified Prestige Ford's employee never said anything about a lease, and the documents provided to her at that time said nothing about a lease.

Although the dealership gave Morales the November 1999 sales contract, it is undisputed that Prestige Ford actually structured her transaction as a lease and financed it with World Omni. Prestige Ford relies on this fact to establish conclusively the date Morales's cause of action accrued. Prestige Ford contends the breach of its promise to sell Morales a car occurred in August 1999—at the time the lease was signed—because that was when Prestige Ford "failed to sell [Morales] the vehicle." Morales, on the other hand, contends the breach of Prestige Ford's promise did not occur until July or August of 2004. Specifically, she asserts the "wrongful act" giving rise to her claim is Prestige Ford's "failure in 2004 to act on the promise it made in 1999 to sell [her] a car." Morales maintains Prestige Ford's promise centers on ownership of the car, and it was not until mid–2004, when she finished making sixty payments of $564, that she was denied ownership of the car.

Generally, the "owner" of a motor vehicle is the person or entity "claiming title to or having a right to operate under a lien" a motor vehicle that has been subject to a sale. TEX. TRANSP. CODE ANN. § 501.002(16) (West 2007); see also Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist., 52 S.W.3d 495, 497 (Tex.App.-Dallas 2001, pet. denied) (owner of personal property is person or entity "holding legal title to the property, or holding an equitable right to obtain legal title to the property"); Pioneer Mut. Compensation Co. v. Diaz, 178 S.W.2d 121, 123 (Tex.Civ.App.-El Paso 1943, no writ) (owner of motor vehicle is one having "legal right" to have title certificate transferred to him). In a sales transaction, title to goods, including motor vehicles, is passed "from the seller to a buyer for a price." TEX. BUS. & COM.CODE ANN. § 2.106(a) (West 2009); see also Vibbert v. PAR, Inc., 224 S.W.3d 317, 322 (Tex.App.-El Paso 2006, no pet.) (motor vehicles included in definition of goods). Unless otherwise explicitly agreed, that title passes to the buyer when the seller completes physical delivery of the goods, even if a document of title is to be delivered at a different time and place. TEX. BUS. & COM. CODE ANN. § 2.401(b); NXCESS Motor Cars, Inc. v. JPMorgan Chase Bank, N.A., 317 S.W.3d 462, 466 (Tex.App.-Houston [1st Dist.] 2010, pet. denied) ("[T]itle passes despite the reservation of a security interest and despite the delivery of a title document at a later time."). In contrast, when a transaction is structured as a "lease," there is no passing of title; the lessee receives a "transfer of the right to

possession and use of [the] goods for a term in return for consideration." TEX. BUS. & COM.CODE ANN. § 2A.103(10) (West 2009).

Applying these principles to the nature of the transaction before us, Prestige Ford breached its promise to sell Morales a car when it had her sign a lease contract. Under the August 1999 lease, Morales never obtained title or equitable right to title to the Expedition and therefore never was the owner of the vehicle. The August 1999 lease contract provides the "[l]essor owns the Vehicle throughout the term of the Lease." It identified the dealership as the lessor and stated World Omni "should also be considered a Lessor" through its assignment from the dealership. The lease contract further instructed that Morales could not assign, transfer, sublease, rent, or pledge the lease or vehicle without World Omni's written consent or otherwise "interfere with [World Omni's] ownership of the vehicle." Although Prestige Ford promised to sell Morales a car, because it had her sign a lease, it never fulfilled that promise. *Compare* TEX. BUS. & COM.CODE ANN. §§ 2.106(a), *and id.* § 2.401(b), *with id.* § 2A.103(10). Instead, what Morales received from Prestige Ford under the lease contract was the right to possess and use the vehicle and the obligation to insure and maintain the vehicle, but she received no ownership interest, except for a future option to purchase.

Morales's contention the breach occurred when Prestige Ford failed to convey her the car goes to whether Prestige Ford could have cured the breach rather than to when the cause of action accrued. The facts show Prestige Ford promised to sell Morales a car in August 1999 but had her sign a lease contract. Despite presenting her with a sales contract in November 1999 to confirm Morales had bought the vehicle, there is no evidence the dealership acted on that subsequent sales contract or that Morales performed under the terms of that document. Morales in fact agreed the terms of the lease contract were the terms she performed. It was when Prestige Ford converted the transaction into a lease that Prestige Ford did not do what it promised. *See Bloom,* 1995 WL 379272, at *3 (insurance agent promised to notify policyholder before policy expired; breach occurred when policy lapsed without notification to policyholder). Morales's contention that Prestige Ford could have corrected the breach does not change the date when the breach occurred.

We conclude the evidence conclusively shows Prestige Ford breached its promise to sell Morales a car when it had her sign a lease and that lease became effective. As a result, Morales's cause of action accrued in August 1999, over six years before Morales filed suit. Because Morales did not file suit within the applicable four-year statute of limitations, her cause of action is time-barred and Prestige Ford is entitled to judgment as a matter of law. Accordingly, we conclude the trial court erred in denying Prestige Ford's motion for JNOV. We sustain Prestige Ford's second issue.

Based on our conclusion that Morales's promissory estoppel claim is barred by limitations, we do not reach Prestige Ford's remaining issues of whether (1) the trial court erred in denying Prestige Ford's motion for directed verdict or (2) attorney's fees are recoverable on a claim for promissory estoppel. *See* TEX.R.APP. P. 47.1.

**CONCLUSION**

We reverse the trial court's judgment and render judgment that Morales take nothing on her claim.