

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00461-CV

CITY OF JUSTIN, TEXAS                                                  APPELLANT

V.

RIMROCK ENTERPRISES, INC.                                              APPELLEE

----------

### FROM THE PROBATE COURT OF DENTON COUNTY
### TRIAL COURT NO. PR-2009-00779

----------

## OPINION

----------

## I. INTRODUCTION

Appellant City of Justin, Texas, undertook a reconstruction project in 2009 to improve a number of roads located in its industrial park. Part of one of the improved roads, Colorado Avenue, crossed a tract of land owned by Appellee Rimrock Enterprises, Inc. Rimrock sued the City for inversely condemning its property, and the City claimed that the road had been impliedly dedicated to the

public.  A jury found that only part of Colorado Avenue had been impliedly dedicated and awarded Rimrock compensation for the portion that the City had taken.

In seven issues, the City argues that it conclusively established its statute-of-limitations affirmative defense; that it proved as a matter of law that all of Colorado Avenue had been impliedly dedicated for public use; that Rimrock failed to prove its inverse condemnation claim, its damages, and its attorneys' fees; that the trial court erred in its charge; and that Rimrock's declaratory-relief claim was improper.  We will affirm in part and reverse and render in part.

## II. BACKGROUND

The City is located in Denton County and had a population of 3,150 in 2010.  The City's east and west sides are generally divided by railroad tracks that run north and south.  The City's downtown area is located on the west side of town.  The east side of town has a few residences but primarily contains commercial and industrial businesses, including Rimrock, a Texas corporation owned by Carla Hardeman.  Rimrock contracts with governmental entities to perform work like silt removal and dredging.

In 1886, L.S. Helms deeded a tract of land located immediately east of the railroad tracks to the Atchison, Topeka and Santa Fe Railway Company

2

(AT&SF).[1]  At some point in the 1950s, the AT&SF began leasing a portion of that property to a business owned by Buddy Hardeman, Carla's uncle.  Carla's father C.J. Hardeman later partnered with Buddy and leased the same property from the AT&SF after Buddy died.  In 1994, C.J. assigned his lease to Rimrock, who purchased the property from the AT&SF that same year.

Rimrock's property is a rectangular-shaped, 2.17-acre tract.  According to a survey that was performed when Rimrock purchased the property (set out in part below), the east and west boundaries of the property measure 473' long and the north and south boundaries measure 200' wide.  Fifth Street (a/k/a F.M. 407) borders the southern side of the property; the railroad tracks border the western side of the property; a private parcel borders part of the northern side of the property; and Colorado Avenue runs north and south on the eastern side of the property.[2]  There is no dispute that Colorado Avenue crosses the eastern portion of Rimrock's property.

---

[1]Helms created a plat map in 1887 that identifies the property as a "Rail Road Reservation."

[2]Colorado Avenue continues north beyond Rimrock's property, where it eventually dead-ends at Seventh Street, but that portion of the road is not the subject of this lawsuit.



Colorado Avenue appeared on the City's "Original Town Plat" and also on the 1887 Helms plat. However, according to C.J., who grew up in the City and graduated from high school in 1951, Colorado Avenue was not a road or a street in the early 1950s; it was a trail, but cars could use it if it had not rained. In the late 1950s or early 1960s, Buddy covered the road with gravel to help make it passable, especially for the heavy equipment that his business used. Sometime

4

in the 1970s, and several times thereafter, Buddy and C.J. "chip sealed" the road.  In 1970, C.J. installed a fence around the leased property, but the fence did not extend to include the eastern portion of the leased property that Colorado Avenue crossed.[3]  C.J. located the fence there because he did not want to deny his neighbors, who used Colorado Avenue, access to the road.  Indeed, at no point when C.J. leased the property or during Carla's ownership of it has a "Private Property" or a "No Trespassing" sign been posted on the part of Colorado Avenue that crosses the property; the public has used the road for decades.

In June 2009, as part of an effort to improve the quality of the roads located in the City's industrial park, the City constructed concrete roads over the existing dirt or gravel roads.[4]  One of those roads was Colorado Avenue.  The dirt and gravel road that had been there was "basically pulverized into the subgrade and mixed with lime."  Unpaved ditches—at most two feet deep—are located on either side of the improved road.

In October 2009, Rimrock sued the City for inversely condemning the part of its property that the City improved—where Colorado Avenue crosses, or .78 acres of Rimrock's property.  *See* Tex. Const., art. I, § 17.  In response, the City

---

[3]In other words, the eastern border of the fence tracked the western side of Colorado Avenue, not the eastern border of the leased property.

[4]The City also installed or replaced water and sewer lines along the roads.

5

pleaded, among other things, that Rimrock's inverse condemnation claim was barred by limitations and that no taking had occurred because the portion of Colorado Avenue that crossed Rimrock's property was impliedly dedicated to the public before Rimrock purchased the property. Rimrock later added a claim seeking a declaratory judgment.

At the jury trial that ultimately followed, the trial court submitted, and the jury answered, the following six questions:

### **QUESTION ONE**

Do you find from a preponderance of the evidence that the road, referred to in this action as Colorado Avenue, was dedicated as a public road?

. . . .

**ANSWER:** Yes

. . . .

### **QUESTION TWO**

What is the total square footage, if any, of the road, referred to in this action as Colorado Avenue, that was dedicated by implied dedication?

In answering question two you are instructed that at the time of the implied dedication of the road, the size of the dedicated road is not limited by the beaten path used, but may be made to include sufficient land for drainage ditches, repairs, and the convenience of the traveling public, which would be reasonable and customary in that locality for that type of terrain.

Answer in **square footage**.

6

**ANSWER:** 7,095 square feet

### QUESTION THREE

What is the square footage, if any, of the current road, referred to in this action as Colorado Avenue, that is inside the boundary lines of the real property owned by [Rimrock] that has not been dedicated by implied dedication to the City of Justin?

In answering question three you are instructed that the size of the road is not limited by the beaten path used, but may be made to include sufficient land for drainage ditches, repairs, and the convenience of the traveling public, which would be reasonable and customary in that locality for that type of terrain.

Answer in **square footage**.

**ANSWER:** 21,285 square feet

. . . .

### QUESTION FOUR

What was the date of the take, if any, by the City of Justin?
Answer in **month, date and year**.

**ANSWER:** 6/15/2009

### QUESTION FIVE

What was the fair market value of the total amount of the square footage taken, if any, at the date of the take?

In answering question five you are to use your answer to question three as the total amount of square footage taken, if any. Also, for purposes of determining the value of the square footage

7

taken, if any, you are instructed to use your answer to question four as the date of the take.

Answer in **dollars and cents**.

**ANSWER** $105,573.60

**QUESTION SIX**

What is the amount of damage, if any, to Rimrock's remaining property resulting from [the City's] taking, if any, of Rimrock's property, if any?

You are instructed that in answering question Six, you are to consider the difference between (a) the fair market value of the remaining property immediately before the taking and (b) the fair market value of the remaining property immediately after the taking, giving consideration to the uses to which the part that has been taken is to be put.

Answer in **dollars and cents**.

**ANSWER** $7,500.00

The trial court later heard evidence on attorneys' fees and awarded Rimrock fees in the amount of $42,000 and expenses in the amount of $8,400. It also (i) denied the City's motion for judgment notwithstanding the verdict (JNOV), (ii) signed a final judgment that incorporated the jury's findings and that ordered an easement in favor of the City measuring 60' wide and 473' long running parallel to the eastern boundary of Rimrock's property, and (iii) denied the City's motion for new trial.

8

### III. STATUTE OF LIMITATIONS

The City argues in its first issue that the trial court erred by denying its motion for JNOV on the ground that Rimrock's inverse condemnation claim was barred by the applicable statute of limitations.

A trial court may disregard a jury verdict and render a JNOV when the evidence conclusively establishes the right of the movant to judgment. *See* Tex. R. Civ. P. 301; *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). To determine whether the trial court erred by rendering a JNOV, we view the evidence in the light most favorable to the verdict under the well-settled standards that govern legal sufficiency review. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). We must credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007).

Statute of limitations is an affirmative defense; therefore, the defendant bears the burden to plead, prove, and secure findings to support the defense. *See* Tex. R. Civ. P. 94; *Prestige Ford Garland Ltd. P'ship v. Morales*, 336 S.W.3d 833, 836 (Tex. App.—Dallas 2011, no pet.). This burden includes establishing

when the plaintiff's cause of action accrued to demonstrate the bar of limitations. *Prestige Ford*, 336 S.W.3d at 836. When the jury is not asked to determine when the cause of action accrued for purposes of supporting a limitations defense, the defense is waived unless the date was conclusively established by the evidence. *Id.*; *see* Tex. R. Civ. P. 279.

Inverse condemnation occurs when the government intentionally performs an act that results in the taking of private property for public use. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001). There is no statutory provision specifically providing a limitations period for inverse condemnation actions. *Trail Enters., Inc. v. City of Houston*, 957 S.W.2d 625, 631 (Tex. App.—Houston [14th Dist.] 1997, pet. denied), *cert. denied*, 525 U.S. 1070 (1999). However, Texas courts agree that a plaintiff's claim for inverse condemnation is barred after the expiration of the ten-year period of limitations to acquire land by adverse possession.[5] *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.026 (West 2002). For cases of adverse possession, a cause of action accrues and limitations begins to run when entry upon the land is made. *Trail Enters.*, 957 S.W.2d at 631; *Waddy v. City of Houston*, 834 S.W.2d 97, 103 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

---

[5]When an inverse condemnation claim involves property that has been damaged, as opposed to taken, the limitations period is only two years. *See Allodial Ltd. v. N. Tex. Tollway Auth.*, 176 S.W.3d 680, 684 (Tex. App.—Dallas 2005, pet. denied). There is no dispute that Rimrock sought compensation for a taking.

The City did not secure a jury finding on its limitations defense. Therefore, to prevail on this issue, the evidence must conclusively establish that Rimrock's inverse condemnation claim accrued before October 1999, ten years before Rimrock filed its original petition in October 2009. *See Prestige Ford*, 336 S.W.3d at 836.

We initially note that the City directs us to evidence that the public used Colorado Avenue as early as the 1930s, 1940s, and 1950s, but this is no evidence for purposes of our accrual inquiry because it is not evidence that *the City*—the governmental defendant in this case—entered the land. *See Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992) (reasoning that inverse condemnation occurs when *the government* appropriates property without paying adequate compensation); *Millwee-Jackson Joint Venture v. Dallas Area Rapid Transit*, 350 S.W.3d 772, 781 (Tex. App.—Dallas 2011, no pet.) ("When *a defendant's* conduct produces a legal injury, however slight, the cause of action accrues and the statute of limitations begins to run.") (emphasis added); *Trail Enters.*, 957 S.W.2d at 632–33 (reasoning that inverse condemnation claim accrued for limitations defense when *city* passed ordinance); *Waddy*, 834 S.W.2d at 103 (holding that inverse condemnation claim accrued for limitations defense when *city* installed pipe across property).

Nonetheless, the City points to evidence that it entered the land, and even maintained it, well before 2009, and even before Rimrock purchased the property

11

in 1994. But Carla testified that the City entered her property, and achieved a taking, in June 2009, when the City constructed the concrete road, and that the City performed no maintenance on her property before 2009. Because the record contains conflicting evidence regarding when Rimrock's inverse condemnation claim accrued, the City did not conclusively establish its limitations affirmative defense. *See Holland v. Lovelace*, 352 S.W.3d 777, 791 (Tex. App.—Dallas 2011, pet. denied) (reasoning that an accrual date is conclusively established if reasonable minds could not differ about the conclusion to be drawn from the facts). We overrule the City's first issue.

## IV. WIDTH OF COLORADO AVENUE IMPLIEDLY DEDICATED

The improved portion of Colorado Avenue that crosses Rimrock's property measures 473' long by 60' wide. As Rimrock observes, the jury used these figures to calculate its answers to jury question numbers 2 and 3—the portion of Colorado Avenue that was impliedly dedicated (473' x 15' = 7,095 square feet) and the portion that was not impliedly dedicated (473' x 45' = 21,285 square feet).[6] In its second issue, the City challenges the jury's finding that only 7,095 square feet of Colorado Avenue, or 473' x 15', had been impliedly dedicated, arguing that it proved as a matter of law that the entire width of Colorado Avenue, or 473' x 60', was impliedly dedicated to the public.

---

[6]Indeed, 473 x 60 = 28,380, which is the equivalent of 7,095 + 21,285, the total of the jury's answers to question numbers 2 and 3.

12

The City bore the burden of proof on its implied dedication claim. A party challenging the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof at trial must demonstrate on appeal that the evidence conclusively established, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The reviewing court first examines the record for evidence that supports the finding, crediting favorable evidence if a reasonable factfinder could, while disregarding contrary evidence, unless a reasonable factfinder could not. *Id.*; *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If no evidence supports the finding, then the reviewing court will examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241.

The City directs us to evidence that the full sixty-foot width of Colorado Avenue was impliedly dedicated, but we are required to first examine the record for evidence that supports the jury's finding that only 7,095 square feet was impliedly dedicated. *See id.* C.J. testified that Colorado Avenue used to be a trail, not a "street"; that the road was, at most, twelve feet wide; and that two cars could pass on the road, but only if one moved over to the ditch. Carla testified that Colorado Avenue used to be a trail, that the pre-improved road was no more than fifteen feet wide, that the improved road is wider than the pre-improved road, and that the improved road is "a larger area than [her] private road [was]."

13

Rimrock argues that none of Colorado Avenue was impliedly dedicated, but the City presented uncontroverted evidence that the road had been open to and used by the public for decades, as the jury found in answer to question number 1.[7] *See Las Vegas Pecan & Cattle Co. v. Zavala Cnty.*, 682 S.W.2d 254, 256 (Tex. 1984) (listing elements of implied dedication). This evidence, and any reasonable inferences that can be drawn therefrom, supports the jury's finding that only 7,095 square feet, or 473' x 15', of Colorado Avenue had been impliedly dedicated.

Directing us to *State v. NICO-WF1, L.L.C.*, the City argues that, as a matter of law, the entire sixty-foot width of Colorado Avenue was impliedly dedicated because "[l]and dedicated as a street includes the whole width of the public right of way, including sidewalks and parkways, which are a part of the street itself, and pavement, shoulders, gutters, curbs, and other areas within the street lines." 384 S.W.3d 818, 821 (Tex. 2012). In *NICO*, Arroyo Boulevard was dedicated for public use in 1928. *Id.* at 820. The dedication "provided that its boundary lines were to be 100 feet apart with curb lines fifteen feet inside the outer boundaries, leaving seventy feet between the curb lines." *Id.* TxDOT later discovered that part of a building owned by NICO encroached about ten feet onto

---

[7]In any event, insofar as Rimrock seeks greater relief than it was awarded in the trial court, it was required to file a notice of appeal to raise this cross-issue, but it did not do so. *See* Tex. R. App. P. 25.1(c); *City of Austin v. Whittington*, 384 S.W.3d 766, 789 (Tex. 2012).

14

Arroyo Boulevard's 100-foot public right of way. *Id.* The State sued NICO, and NICO sought a declaration that its building did not encroach on Arroyo Boulevard because the public dedication limited the road's width to the existing curb line. *Id.* The trial court granted summary judgment for NICO, concluding that Arroyo Boulevard was subject to a curb-line condition that limited the roadway to a maximum of seventy feet. *Id.* at 820–21. The court of appeals affirmed but also held that NICO's building did not encroach on the public right of way because the fifteen feet between the curbs and outer street lines "[were] not dedicated for any public use whatsoever." *Id.* It was in the context of addressing this additional holding by the court of appeals—that the public-street easement was defined by a curb-line condition rather than the street's boundary line as dedicated—that the supreme court made the following observations:

> When a street is dedicated to the public, the governmental entity taking control of the street ordinarily acquires only an easement that it holds in trust for the public benefit. The easement, however, carries with it the right to use and control as much of the surface and subsurface of the street as may be reasonably needed for street purposes. These purposes, of course, include transporting people and property, but a public street may also be used as a passageway for utilities and other public purposes.

> In short, a street includes the whole width of the public right of way. It includes sidewalks and parkways, which "are a part of the street itself." And it includes "the pavement, shoulders, gutters, curbs, and other areas within the street lines."

15

*Id.* at 821 (citations omitted). The supreme court held that the court of appeals had erred by concluding that the dedication was defined by the curb-line condition.[8] *Id.*

The City's heavy reliance on *NICO* is misplaced. *NICO* involved an express dedication with clearly defined boundaries and a lower court ruling that misapplied the law in determining the extent of those undisputed boundaries. *See id.* at 820–21. In this case, there was an implied dedication of an unspecified size and jury questions inquiring about the extent of the dedication. In other words, one case called on a jury to resolve a disputed dedication of undefined proportions; the other called on a court to apply the law to an undisputed dedication of clearly defined proportions. The inquiry posed to the jury in this case was not the same inquiry posed to the supreme court in *NICO*.

Further, to the extent that the City argues that the jury's finding in question number 2 somehow ran afoul of the law elaborated in *NICO*, the jury was instructed that in determining the square footage of the implied dedication, "the size of the dedicated road is not limited by the beaten path used, but may be made to include sufficient land for drainage ditches, repairs, and the convenience of the traveling public." This instruction is consistent with the law set out in *NICO* and advocated by the City on appeal. Unless the record demonstrates

---

[8]The supreme court additionally held that the curb-line condition was "repugnant to the State's control and authority over the public street and is void," but that holding is not relevant to the City's argument. *NICO*, 384 S.W.3d at 824.

otherwise, appellate courts must presume that the jury followed the instructions given in the jury charge. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003). There is nothing in the record to indicate that the jury did not follow this instruction. Given this presumption, and in light of the evidence detailed above, we decline to interfere with the jury's finding in question number 2 that no more than 7,095 square feet was reasonably needed for street purposes. *See NICO*, 384 S.W.3d at 821.

Because the record contains evidence that supports the jury's finding, we do not review the record to determine if the City established its contrary proposition as a matter of law. *See Dow Chem. Co.*, 46 S.W.3d at 241. We overrule the City's second issue.

## V. INTENT TO TAKE

The City argues in its third issue that the trial court erred by denying its motion for JNOV on the ground that Rimrock failed to prove that the City acted with the requisite intent to constitute a taking under the Texas constitution. The City contends that it "believed that the road was a public road and the project was undertaken on that belief."

A trial court may grant a motion for JNOV if no evidence supports the jury's finding on an issue necessary to liability. *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). Again, we view the evidence in the

17

light most favorable to the finding under the standards that govern legal sufficiency review. *Ingram*, 288 S.W.3d at 893.

The intent element of an inverse condemnation claim is satisfied by proof that the government knows that the specific act is causing identifiable harm or knows that the harm is substantially certain to result. *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). Acts of mere negligence will not support a takings claim because the State is generally entitled to immunity for negligence and, more importantly, "we seek to ensure that the public does not bear the burden of paying for property damage for which it received no benefit." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554–55 (Tex. 2004); *see* Tex. Const., art. I, § 17 (including public use requirement).

The evidence demonstrates that the City undertook a public-works project to improve the roads located in its industrial park, including Colorado Avenue. The City hired engineers to prepare construction documents; held meetings to address issues, including Rimrock's property; and followed through with the project by constructing concrete roads on dirt and gravel roads that were in poor condition. Carla testified that at some point before the City began construction, "some officials came to [her] and . . . said that they . . . wanted a deed. They wanted me to give them the right-of-way deed to release the property to them." Carla did not agree to let the City perform the work on her property, but the City proceeded anyway. Rimrock thus produced some evidence from which the jury

18

could have rationally concluded that, at a minimum, the City knew that by constructing a concrete road on property that Rimrock owned, Rimrock was substantially certain to be harmed as prohibited by article I, section 17 of the Texas constitution. *See Jennings*, 142 S.W.3d at 314. We hold that the trial court did not err by denying the City's motion for JNOV on this ground, and we overrule the City's third issue.

## VI. DAMAGES

The City argues in its fifth issue that the "award of damages was against the weight of evidence and the law" because Rimrock produced no evidence of the market value of its remaining property after the taking and because the trial court should have charged the jury using an alternative broad-form method. We consider the latter complaint first.

A trial court has broad discretion in submitting its jury charge, and we review a complaint regarding the submission of jury questions for an abuse of discretion. *Air Prods. & Chems., Inc. v. Odfjell Seachem A/S*, 305 S.W.3d 87, 100 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

The supreme court has "long held that the measure of compensation in a partial-takings case is the market value of the part taken plus damage to the remainder caused by the condemnation." *Westgate*, 843 S.W.2d at 456. The supreme court has also outlined two acceptable methods for calculating these damages—the *Carpenter* approach and the *Uselton* approach. *Id.* at 456–57;

19

*see State v. Petropoulos*, 346 S.W.3d 525, 530 (Tex. 2011); *Uselton v. State*, 499 S.W.2d 92 (Tex. 1973); *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194 (1936). A broad-form question that properly implements the *Carpenter* approach "should be reduced to two questions: first, the market value of the part taken, considered as severed land, and second, damages to the remainder, accompanied by an instruction that such damages should be determined by considering the difference between the remainder's pre-and post-taking value." *Westgate*, 843 S.W.2d at 457. A broad-form question that properly implements the *Uselton* approach should also be reduced to two questions: "first, the market value of the part taken, considered as severed land, and second, the damages to the landowner's property, accompanied by an instruction that such damages should be determined by considering the difference between a) the value of the landowner's entire tract before the taking, and b) the market value of the remainder after the taking."[9] *Id.* The *Uselton* approach is preferable when the part taken is a small or irregularly shaped tract *that is difficult to value as a severed land. Id.* at 456. The trial court has discretion to determine whether the

---

[9]Under this approach, the total measure of damages is usually the damages to the landowner's property (the second question). *Westgate*, 843 S.W.2d at 456. However, if that figure is less than the market value of the part taken (the first question), indicating that the condemnation increased the value of the remainder, the landowner is entitled to the market value of the part taken. *Id.* If there is no evidence of such an increase, the first *Uselton* question generally need not be submitted. *Id.* at 457.

20

*Carpenter* approach or the *Uselton* approach should be used, given the circumstances of the particular case. *Id.* at 457.

Jury question numbers 5 and 6, the damages questions, utilized the *Carpenter* approach. The City argues that the trial court should have instead submitted questions that employed the *Uselton* approach.[10] Given the particular circumstances of this case, however, we cannot conclude that the trial court abused its discretion by framing jury question numbers 5 and 6 to track the *Carpenter* approach because the part of Rimrock's property that was taken was not difficult to value as a severed land. As explained above, the jury's implied dedication findings are derived from a 473' x 60' figure, or 28,380 total square feet, representing the improved portion of Colorado Avenue that crosses Rimrock's property. In finding that 7,095 of those 28,380 square feet had been impliedly dedicated to the public, the jury then used simple mathematics to determine the value of the severed land—it multiplied the difference between 7,095 and 28,380 by a price-per-square-foot figure that fell between the range of testimony elicited from Rimrock's and the City's appraisal experts. The City concedes that "the measure of damages was within the permissible range of damages supported by the evidence." We overrule this part of the City's fifth issue.

---

[10]The City's amended proposed charge reflected these questions.

The City also argues that the jury's remainder-damages award "was against the weight of the evidence" because Rimrock produced no evidence of the remainder's post-taking market value.[11] Rimrock relied upon the expert opinion of Joe Milkes to appraise the real property in this case. Milkes opined in his report that while the remainder's value incurred no loss as a result of the taking, the remainder had suffered damages in the amount of $7,500 to the fence, posts, and gate on the east side of the property and damages in the amount of $19,200 for revised concrete entry aprons. James Hogg, the City's expert, opined that the value of the remainder after the taking had not decreased but had actually increased slightly. The jury awarded Rimrock $7,500, an amount within the range of the experts' testimony.

In *Suleiman v. Texas Department of Public Transportation*, the expert appraisers for both sides concluded that there was no diminution in the remainder's market value due to the taking but that the remainder had sustained damages in an amount equal to the cost to replace a fence, and one of the appraisers additionally opined that the remainder had incurred damages for the

_____

[11]In light of statements contained in the City's brief, we construe this argument to raise a factual sufficiency complaint. When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

22

cost to remove a canopy. No. 01-09-00099-CV, 2010 WL 2431076, at *3–4 (Tex. App.—Houston [1st Dist.] June 17, 2010, no pet.) (mem. op.). The jury awarded the landowner remainder damages in an amount within the range provided by the experts for the cost of replacing the fence and the canopy, and the court of appeals, after addressing several other sub-arguments, overruled the appellant's factual sufficiency complaint. *Id.* at *4, *6.

The facts and arguments in this case are strikingly similar to those in *Suleiman*. Like the court in that case, we hold that the evidence is sufficient to support the jury's remainder-damages finding. *See Westgate*, 843 S.W.2d at 456 (reasoning that the proper measure of compensation in a partial-takings case is the market value of the part taken plus damages to the remainder caused by the condemnation). We overrule the remainder of the City's fifth issue.

## VII. BIFURCATION AND CHARGE

### A. Bifurcation

In part of its sixth issue, the City argues that the trial court erred by denying its motion to bifurcate the trial. It contends that the trial court should have first conducted a bench trial to determine whether and when Rimrock's property had been taken and then conducted a separate jury trial, if necessary, on the compensation issues. According to the City, a "unified trial of the taking/damaging questions and the valuation questions created an inherently unfair dilemma for the City":

23

Until the jury[] returned its verdict, *at the end of the jury trial on the merits*, the parties did not know: (1) whether the court would find the City responsible at all; (2) whether[] the court would find that the City had taken Rimrock's property; (3) if a taking were found, when the taking occurred; and (4) how much property was affected by the . . . taking.

. . . .

. . . Because the issue of the taking was tried at the same time as the issue of damages, the City was obligated to present evidence it otherwise would not have presented to the jury for its consideration of the question of damages . . . .

*Gragg* is an inverse condemnation case. 151 S.W.3d at 549. At the conclusion of the jury trial, the trial court (i) held that the Tarrant Regional Water District had inversely condemned the plaintiffs' property and (ii) submitted the case to the jury to determine compensation. *Id.* at 550. The District argued on appeal that the trial court should have first conducted a bench trial on the takings issue and then held a separate jury trial on the compensation issue. *Id.* at 556. The supreme court set out the District's arguments as follows:

The District complains that it was prejudiced in a number of respects by the trial court's refusal to order separate trials. First, the District asserts that the failure to bifurcate left it confused about several issues, including "whether the court would find the District responsible at all," whether the court would find a temporary or permanent taking which would in turn call for different damage measures, whether a fee or an easement was taken, and how much of the [plaintiffs' property] was affected. The District argues that the trial court's failure to order separate trials was inherently unfair because it forced the District to present proof of damages while simultaneously contesting liability.

*Id.* In overruling the District's argument, the supreme court reasoned that the District had "articulated no reason why admitting damage evidence before liability is determined is any more prejudicial in the condemnation context than in any other"—defendants typically proceed without knowing whether, and on what theory, they will be found liable, and it is not unusual for a plaintiff to present more than one damage measure during trial. *Id.* at 556–57. Moreover, the record supported the trial court's findings "that separate trials would have resulted in considerable and unnecessary evidentiary repetition," and the supreme court's prior caselaw did not support the District's argument that separate trials must be conducted on taking and compensation in every case. *Id.* at 557.

The City's arguments here are virtually identical to those of the District's in *Gragg*, and they fail for the same reasons. The City does not differentiate this case—in which it had to simultaneously litigate liability and damages—from almost every other case—in which the defendant has to simultaneously litigate liability and damages. Moreover, the City's competing theory of the case was that all of Colorado Avenue was impliedly dedicated to the public. Even if the trial court had conducted a separate trial on the takings issue, it still would have been required to submit the implied dedication issue to the jury.[12] Separate trials

---

[12]And in fact, the jury found that part of Colorado Avenue had been impliedly dedicated.

25

therefore would have involved significant repetition of evidence and, consequently, inefficient use of judicial resources. We hold that the trial court did not abuse its discretion by denying the City's motion to bifurcate the trial. *See* Tex. R. Civ. P. 174(b) (permitting trial court to order a separate trial on any issue "in furtherance of convenience or to avoid prejudice"); *Gragg*, 151 S.W.3d at 556 (applying abuse of discretion standard of review to bifurcation determination). We overrule this part of the City's sixth issue.

## B.    Charge Error

The City also argues in its sixth issue that the trial court erred by "present[ing] a charge to the jury which implied that a taking had actually occurred . . . ; alternatively, the charge improperly transferred the burden of deciding whether a taking had in fact occurred to the jury."

We are not convinced that the charge, as worded, transferred to the jury the determination of whether a taking had occurred. The charge contained neither a definition of inverse condemnation nor a question specifically asking whether the City had inversely condemned part of Rimrock's property. Several of the questions do contain "if any" wording, but we decline to read into those few words something as substantial as an affirmative taking finding. Indeed, if a jury's failure to find a particular fact does not permit the reverse of the failed fact finding to be implied, *see C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966), then we do not see how a finding can be implied when a question is

26

not even asked. To the extent that the charge can be read to place the burden of determining whether a finding occurred on the jury, the City provides no argument or analysis explaining how it was harmed.[13] *See* Tex. R. App. P. 38.1(i), 44.1(a)(1).

Of course, if the charge did not transfer to the jury the determination of whether a taking had occurred, then that determination could only have been made by the trial court, as it was required to do. *See City of Austin v. Travis Cnty. Landfill Co.*, 73 S.W.3d 234, 241 (Tex.), *cert. denied*, 537 U.S. 950 (2002); *Harris Cnty. v. Felts*, 881 S.W.2d 866, 870 (Tex. App.—Houston [14th Dist.] 1994), *aff'd*, 915 S.W.2d 482 (Tex. 1996). The City, however, does not assert any issue or argument complaining that the trial court erred by failing to expressly determine at the close of the evidence that the City inversely condemned part of Rimrock's property; it only contends that *the charge* improperly *implied* that a taking had occurred. Addressing only the City's specific contention, we hold that, to the extent the charge did so imply, it was not error, or reversible error, because the charge, the jury's findings, and the trial court's post-verdict actions

---

[13]Insofar as the City contends that it was harmed for the same reasons that it used to show alleged error in failing to bifurcate the proceedings—"whether the court would find the City responsible at all; . . . whether[] the court would find that the City had taken Rimrock's property; . . . if a taking were found, when the taking occurred; and . . . how much of the property was affected by the . . . taking"— those reasons do not somehow simultaneously show any harm under the presumed circumstances here.

are all consistent with an implicit trial court ruling that the City inversely condemned Rimrock's property. *See* Tex. R. App. P. 44.1(a)(1).

As mentioned, the charge did not define inverse condemnation or ask whether the City inversely condemned Rimrock's property. It asked the jury to resolve the primary disputed fact issues between the parties—(i) whether, and how much of, Colorado Avenue was impliedly dedicated to the public and (ii) the amount of compensation that Rimrock was entitled to receive for the taking, considering the jury's finding regarding the amount, if any, of Colorado Avenue that was impliedly dedicated. The charge gave detailed instructions for both issues. The jury found that 7,095 square feet of Colorado Avenue had been impliedly dedicated and that 21,285 square feet had not been impliedly dedicated. The total square footage of the findings—28,380—just happens to equal exactly 473' x 60', the same figures that the trial court used in the final judgment to award the City an easement over Rimrock's property.[14] Post-verdict, the trial court denied the City's motion for JNOV, which challenged Rimrock's inverse condemnation claim; signed a final judgment that accounted for the jury's implied dedication findings and awarded Rimrock compensation; and denied the City's motion for new trial, which also challenged Rimrock's inverse

---

[14]The City incorporated and relied upon these figures in its second issue above.

28

condemnation claim. The trial court thus had numerous opportunities to act inconsistently with its implied taking determination, but it never did so.

In *Thomas v. Long*, the supreme court considered whether the court of appeals had properly determined that it lacked jurisdiction over an interlocutory appeal involving a plea to the jurisdiction raised in a motion for summary judgment. 207 S.W.3d 334, 338 (Tex. 2006). The court of appeals had concluded that it lacked jurisdiction in part because the record did not contain an order granting or denying the plea to the jurisdiction. *Id.* The supreme court analyzed this ground as follows:

> In this case, none of the trial court's orders on the parties' cross-motions for summary judgment *explicitly* denied the relief sought in the section of Thomas's motion for summary judgment challenging the trial court's subject matter jurisdiction. However, the trial court's rulings on the merits of some claims for which Thomas argued the trial court lacked subject matter jurisdiction constitute an implicit rejection of Thomas's jurisdictional challenges. The Texas Rules of Appellate Procedure only require that the record show the trial court ruled on the request, objection, or motion, either expressly or implicitly. *Because a trial court cannot reach the merits of a case without subject matter jurisdiction, . . . , a trial court that rules on the merits of an issue without explicitly rejecting an asserted jurisdictional attack has implicitly denied the jurisdictional challenge.* By ruling on the merits of Long's declaratory judgment claim, the trial court necessarily denied Thomas's challenge to the court's jurisdiction.

*Id.* at 339–40 (citations omitted) (emphasis added).

Although the issue here is different, the same reasoning applies. The trial court would not have submitted the implied dedication and compensation questions to the jury if it had not implicitly determined that a taking had occurred.

We acknowledge that the better practice for the trial court is to expressly rule on the condemnation issue before submitting the disputed fact issues to the jury, but in light of the City's specific argument challenging only the form of the charge, and for all of these reasons, we cannot conclude that reversible charge error occurred here. We overrule the remainder of the City's sixth issue.

## VIII. DECLARATORY RELIEF

The City argues in its fourth issue that "the trial court's order granting [Rimrock's] declaratory judgment action was an abuse of discretion and should be reversed" because the requested relief duplicated the issues already before the court and because Rimrock sought the relief solely to recover attorneys' fees.[15] Rimrock responds that it properly sought a declaration of the parties' interests in Rimrock's property in light of the City's implied dedication claim, which also "essentially asked for a declaration that [the City] had obtained a 473' by 60' easement by prescription or implied dedication." We agree with the City.

The purpose of a declaratory judgment is to determine the parties' rights when a controversy has arisen but before a wrong has been committed; it is "preventative in nature." *Etan Indus. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011); *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 2015). Declaratory relief is not available to settle disputes already pending before a

---

[15]The only part of the judgment that awards any declaratory relief is the paragraph that orders an easement over Rimrock's property in favor of the City. The City nonetheless argues that such declaratory relief was improper.

30

court. *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 727 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Indeed, a "declaratory judgment is improper if the relief requested is raised for the first time in an amended petition and merely addresses the same issues as were raised in the original petition." *Id.* A party cannot use the Uniform Declaratory Judgments Act (UDJA) as a vehicle to obtain otherwise impermissible attorneys' fees. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). Article I, section 17 of the Texas constitution does not authorize attorneys' fees in a takings case. *City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 249 (Tex. App.—San Antonio 2006, pet. denied).

Rimrock filed its original petition against the City in October 2009. It alleged a claim for inverse condemnation and a claim for trespass to try title arising out of the City's construction of a concrete road on its property. Rimrock did not allege a claim for declaratory relief until it filed its second amended original petition in November 2010, over a year later. Rimrock averred as follows in its seventh amended petition:

> 18. More specifically, Plaintiff requests a judgment that the City owns no interest in the subject land nor does it hold or benefit from any easement allowing it to own or use Colorado Street across Plaintiff's property.

> 19. This request for a declaratory judgment requires that the Court declare the effect of laws of the State of Texas and the ordinances of the City of Justin upon the rights of the parties, as well as the deed granting Plaintiff the property.

31

20. Plaintiff further seeks declaratory judgment construing and defining the boundaries of any property taken by the City and/or the parameters, scope and extent of any easement(s) in favor of the City.

Paragraph 18 is an improper basis for declaratory relief; Rimrock did not have to seek affirmative declaratory relief to defend against the City's implied dedication claim. Paragraph 19 is boilerplate-like language that does not request any specific relief whatsoever. Regarding paragraph 20, Rimrock argues that declaratory relief was necessary to resolve the boundary dispute between the parties, see Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c) (West 2015), but the dispute was merely incidental to—or entirely subsumed by—the two primary issues in this case—whether there was a compensable taking and whether part or all of Colorado Avenue had been impliedly dedicated to the public. *See Martin v. Amerman*, 133 S.W.3d 262, 267–68 (Tex. 2004) (explaining that boundary dispute was incidental to title dispute and therefore improper basis for declaratory relief). As the City observes, Rimrock's claim for declaratory relief asked for nothing other than what was determined in the inverse condemnation and implied dedication claims. Rimrock argues that the City pleaded a claim for declaratory relief, but we do not find such a claim in the City's live pleading.

We hold that the trial court erred by granting Rimrock declaratory relief because Rimrock sought declarations that duplicated the issues already before the trial court; the declarations therefore merely sought to obtain otherwise impermissible attorneys' fees. *See Etan Indus.*, 359 S.W.3d at 624–25 ("By

32

these standards the declaratory judgment . . . [was] not warranted."); *Staff Indus., Inc. v. Hallmark Contracting, Inc.*, 846 S.W.2d 542, 547–48 (Tex. App.—Corpus Christi 1993, no writ) (reversing declaratory judgment because it "presented no issues beyond those already raised by Staff"). We sustain the City's fourth issue.

## IX. ATTORNEYS' FEES

The City argues in its seventh issue that the trial court erred by awarding Rimrock attorneys' fees. Although a trial court may award attorneys' fees to a party who proceeds under the UDJA, including a party who does not prevail, the trial court has no discretion to award fees if the claim for declaratory relief is brought solely for the purpose of obtaining attorneys' fees. *See Etan Indus.*, 359 S.W.3d at 624–25; *Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 490 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). We have held that Rimrock's claim for declaratory relief was improper for this very reason. Accordingly, the trial court had no discretion to award Rimrock attorneys' fees under the UDJA. *See Etan Indus.*, 359 S.W.3d at 624–25 (holding similarly); *Mungia v. Via Metro. Transit*, 441 S.W.3d 542, 551 (Tex. App.—San Antonio 2014, pet. denied) (same); *City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 454–55 (Tex. App.—Dallas 2010, pet. denied) (same). There being no other basis to support an award of attorneys' fees, we hold that the trial court abused its discretion by awarding Rimrock attorneys' fees and costs. We sustain the City's seventh issue.

33

## X. Conclusion

Having sustained the City's fourth and seventh issues, we reverse the portions of the trial court's judgment (1) that declare an easement over Rimrock's property and (2) that award Rimrock attorneys' fees and expenses, and we render judgment that Rimrock take nothing on those claims. We affirm the remainder of the trial court's judgment. *See* Tex. R. App. P. 43.2(c).

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: MEIER and GABRIEL, JJ.[16]

DELIVERED: April 2, 2015

---

[16]Justice McCoy was a member of the original panel but has retired in the interim.